# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
### HAMMOND DIVISION

RENEE GOODMAN, *et al.*,     )
     )
     Plaintiff,     )
     )
     v.     )     **No. 2:09 CV 355**
     )
TASK FORCE OFFICER ADAM     )
CLARK, *et al.*,     )
     )
     Defendant.     )

## OPINION AND ORDER

This case arises out of an incident that occurred in the early morning of December 28, 2007. (DE # 55 at 5.) Plaintiffs allege that members of the FBI, the Calumet Police Department, and the Hammond Police Department executed a search warrant for evidence of a robbery by forcing entry into plaintiffs' residence and using "flash" and "percussion" grenades. (*Id.* at 5-6.) Plaintiffs were allegedly ordered at gunpoint, handcuffed, taken to the Hammond Police Station, interrogated, and arrested. (*Id.* at 7.) By ten o'clock that night, plaintiffs were released without court appearance or posting bail. (*Id.*) Plaintiffs filed a complaint on August 20, 2008 (DE # 1) and an amended complaint on March 31, 2009. (DE # 55.) Plaintiffs are asserting legal theories of false arrest and illegal imprisonment, excessive force, failure to intervene and prevent excessive force, conspiracy to deprive plaintiffs of constitutional rights, battery, assault, false imprisonment, and intentional infliction of emotional distress, *respondeat superior*, and indemnification, all in violation of the Fourth and Fourteenth Amendment of the Constitution, 42 U.S.C. § 1983, and *Bivens*. (*Id.* at 12.)

On December 21, 2009, defendants L/N/U Cardwell, L/N/U/ Eidam, L/N/U Roger, L/N/U Karl, L/N/U Dale, L/N/U Barret, L/N/U Campos, L/N/U Finely, L/N/U Brian, L/N/U Raymond, L/N/U Miller, L/N/U Kalin, L/N/U Edward, L/N/U Donald, L/N/U Holloway, L/N/U Stephanie, Brian Miller, Richard Hoyda, Adam Clark, and Unknown Police Officers, (collectively the "Individual Hammond Defendants") filed a motion to dismiss themselves from this case. (DE # 104.) Seven days later, plaintiffs filed a motion to amend their complaint. (DE # 108.) Fourteen days later, on January 12, 2010, the Individual Hammond Defendants filed a response to the motion to amend, asking that their motion to dismiss be granted before the motion to amend is considered. (DE # 111 at 3.) On February 8, 2010, plaintiffs filed a motion for leave to file a reply to the Individual Hammond Defendants' response to the motion to amend and a response to the Individual Hammond Defendants' motion to dismiss. (DE # 112.) All three of the motions mentioned above are currently before the court. For the reasons discussed below, the motion for leave to file a reply and response will be **DENIED**, the motion to dismiss will be **DENIED**, and the motion to amend will be **GRANTED**.

### Motion for Leave to File Reply and Response

LOCAL RULE 7.1 of the LOCAL RULES OF THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF INDIANA provides that after service of a motion, the adverse party has fourteen days to file a response to that motion. A moving party has seven days to file a reply to a response. *Id.* Failure to adhere to these deadlines can subject the

motion to summary ruling. *Id.* Time under LOCAL RULE 7.1 is computed according to FEDERAL RULE OF CIVIL PROCEDURE 6. RULE 6(d) provides for an additional three days to be added to the time period after certain kinds of service, including sending a document by electronic means as was done here. FED. R. CIV. P. 6(d); FED. R. CIV. P. 5(b)(2)(E). As of December 1, 2009, every day, including intermediate weekend days and holidays, is counted for any time period. FED. R. CIV. P. 6(a)(1)(B).

Under FEDERAL RULE OF CIVIL PROCEDURE 6(b), on a party's motion the court can extend the time for filing a reply after a deadline has expired if the party "failed to act because of excusable neglect." To determine whether a delay was caused by excusable neglect, courts must consider "all relevant circumstances surrounding the omission" including the danger of prejudice to the other party; the length of the delay and its impact on the proceedings; the reasons for the delay, including whether they were in the "reasonable control of the movant"; and whether the movant acted in good faith. *Raymond v. Ameritech Corp.*, 442 F.3d 600, 606 (7th Cir. 2006) (citing *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993)).

In appropriate circumstances, district courts may deny a request for an extension of only one day after a deadline. *See Reales v. Consol. Rail Corp.*, 84 F.3d 993, 997 (7th Cir. 1996) (stating that in order to manage their caseloads, district courts are "entitled – indeed they must – enforce deadlines"); *Spears v. City of Indianapolis*, 74 F.3d 153, 157 (7th Cir. 1996) (finding that denying a one-day extension under RULE 6(b) was not an abuse of discretion and stating "[w]e live in a world of deadlines.

3

If we're late for the start of the game or the movie, or late for the departure of the plane or the train, things go forward without us. The practice of law is no exception. A good judge sets deadlines, and the judge has a right to assume that deadlines will be honored. The flow of cases through a busy district court is aided, not hindered, by adherence to deadlines.").

This case began in the United States District Court for the Northern District of Illinois and was transferred to the Northern District of Indiana on October 22, 2009. (DE # 93.) Before that time, on June 12, 2009, the Individual Hammond Defendants filed a motion to dismiss that is substantially similar to the one before this court in terms of its arguments about dismissal for insufficient service and insufficient process of service. (DE ## 75, 76.) Plaintiffs responded on July 10, 2009. (DE # 81.) As noted above, once the case was transferred to this court, the Individual Hammond Defendants filed another motion to dismiss on December 21, 2009. Plaintiffs' response was due on January 7, 2010. Plaintiffs did not ask for leave to file a response until February 8, 2010 – forty-nine days after the motion to dismiss was filed. (DE # 112.)

To explain this delay, counsel for plaintiffs, Blake Horwitz, states that he was not retained until early December 2009. (DE # 112 at 3.) He applied for *pro hac vice* status on December 22, 2009 (DE # 106), a day after the motion to dismiss was filed, and his application was granted on December 29, 2009. (DE # 109.) Before his application was approved, Mr. Horwitz was not an attorney of record. (DE # 112 at 3.) He filed a motion to amend the complaint on December 28, 20009. (DE # 108.) Mr. Horwitz states that

before he applied for *pro hac vice* admission, he engaged in substantial investigation and analysis of the documents provided in initial discovery. (DE # 112 at 3.) He states that the documents were difficult to interpret and analyze and that his analysis was focused on ensuring that all of the "defendants were properly named in the action." (*Id.*)

Mr. Horwitz also explains that because the statute of limitations expired on December 28, 2009, he needed to meet frequently with plaintiffs' prior counsel and to conduct document review in order not to forfeit causes of action against viable defendants. (*Id.*) He states that the Individual Hammond Defendants' motion to dismiss was filed after the prior counsel was terminated and prior to Mr. Horwitz's receipt of notice of the motion and to the acceptance of his *pro hac vice* application. (DE # 112-1 at 2.) In fact, plaintiffs' former counsel, Anthony Schumann, did not move to withdraw as plaintiffs' attorney until January 7, 2010, after the motion to dismiss was filed. (DE # 110.) His request to withdraw was granted on March 24, 2010. (DE # 114.) Nevertheless, Mr. Horwitz contends that he was only aware of the motion to dismiss close to February, 2009, and he never received a copy of the motion. (*Id.* at 4.) He now asks for leave to submit the brief filed on July 10, 2009 in response to the Individual Hammond Defendants' first motion to dismiss as the response to the current motion to dismiss. (DE # 112 at 7.)

On January 12, 2010, in their response to plaintiffs' motion to amend their complaint, the Individual Hammond Defendants point out that plaintiffs had not responded to the motion to dismiss and argue that, therefore, there is no opposition to

5

their motion. (DE # 111 at 2.) They argue that plaintiffs' request to amend their complaint is "an abandonment of the First Amended Complaint," and because of this, they ask that their motion to dismiss be granted even before the court considers whether plaintiffs have established a proper basis to amend their complaint. (*Id.* at 3.)

Plaintiffs also have not filed a reply to the Individual Hammond Defendants' response to plaintiffs' motion to amend the complaint. (DE # 112 at 4.) The Individual Hammond Defendants' response was filed on January 1, 2010 (DE # 111), the reply should have been filed by January 11, 2010, and plaintiffs asked for leave to file their reply on February 8, 2010 (DE # 112), twenty-eight days after the deadline. In explaining this delay, Mr. Horwitz states that he was in a trial from January 25 through January 29, 2010,[1] and therefore unable to prepare a timely reply. (*Id.* at 4.)

For both extensions, the brunt of the court's analysis of the *Pioneer* factors for whether excusable neglect existed focuses on the reasons for plaintiffs' delay. The Individual Hammond Defendants do not argue that either delay has caused them any prejudice. The lengths of both delays were not minimal - a thirty-two day delay in responding to the motion to dismiss and a twenty-eight day delay in filing the reply to the response to the motion to amend. It is not apparent that plaintiffs acted in bad faith in regards to either briefing. However, plaintiffs have also failed to present reasons for

---

[1] Both the motion and the accompanying affidavit of Blake Horwitz state that the trial occurred from January 25, 2009 to January 29, 2009. (DE # 112 at 4; DE # 112-1 at 2.) However, for plaintiffs' argument to make sense, it appears to the court that counsel intended to state that the trial took place from January 25 to January 29, 2010.

delay that constitute excusable neglect or in any way fall outside of their control. Some courts have noted that the reason for delay is perhaps the "most significant factor in the *Pioneer* test." *Brooks v. Kmart Corp.*, 315 B.R. 718, 722 (N.D. Ill. 2004). *Cf. United States v. Premises Known as Lots 14, 15, 16, 19, 47, & 48*, 682 F. Supp. 288, 290 (E.D.N.C. 1987) (stating that a showing of excusable neglect pursuant to RULE 6(b) requires a "demonstration of good faith on the part of the party seeking an enlargement *and* some reasonable basis for noncompliance within the time specified in the rules") (citing 4A WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE § 1165 at 480).

First, plaintiffs have not shown excusable neglect for their delay in requesting leave to file a response to the Individual Hammond Defendants' motion to dismiss. The Seventh Circuit has repeatedly stated that a busy schedule is not excusable neglect for failing to meet a filing deadline. *See Harrington v. City of Chi.*, 433 F.3d 542, 548 (7th Cir. 2006) (rejecting plaintiff's counsel's excuse that he was a solo practitioner in trial in state court and stating "it is widely accepted that neglect due to a busy schedule is not excusable"); *United States v. Dumas*, 94 F.3d 286, 289 (7th Cir. 1996) ("'Counsel's schedule and defendant's responsibilities,' without further elaboration, are insufficient reasons to support the necessary determination that there was 'excusable neglect.' 'Excusable neglect' requires something more than a simple failure to meet the deadline due to a busy schedule."); *Williams v. Shineski*, No. 09-1234, 2010 U.S. App. LEXIS 6998, at *7-8 (7th Cir. Apr. 5, 2010) (unpublished).

Further, attorneys have a duty to apprise themselves of the status of a case and "attorney in-attentiveness" is not excusable neglect. *Easley v. Kirmsee*, 382 F.3d 693, 698 (7th Cir. 2004); *Casimir v. Sunrise Fin., Inc.,* 299 Fed. Appx. 591, 593 (7th Cir. Nov. 14, 2008) (unpublished) (rejecting plaintiffs' excuse that they didn't receive mailed notice of the status of their case until twenty-one days after summary judgment was entered when the court order was available through an online electronic docketing system and noting that "all litigants . . . are responsible for maintaining communication with the court and monitoring the status of their lawsuit as necessary"); *McMillian v. Dist. of Columbia*, 233 F.R.D. 179, 181 (D.D.C. 2005) ("The parties to a case bear the responsibility of monitoring the court's docket."). Even if Mr. Horwitz did not receive e-mail notice of the motion, he still had a duty to monitor the court's docket. *Fox v. Am. Airlines, Inc.*, 389 F.3d 1291, 1294 (D.C. Cir. 2004); *Bardney v. United States*, 959 F. Supp. 515, 522 (N.D. Ill. 1997) ("the 'I didn't receive notice' defense doesn't work in federal court. Were it to work, any disingenuous attorney could delay, or even preclude, compliance with a court order by asserting a justification akin to the 'ostrich defense,' a defense frequently asserted in criminal matters.").

When Mr. Horwitz accepted plaintiffs' case, he had a responsibility to figure out the status of the case and to determine if there were any motions to which he needed to attend. *See e.g.*, *In re Delaughter,* 295 B.R. 317, 320 (Bankr. N.D. Ind. 2003) ("It is not the court's responsibility to apprise counsel of what may be going on. . . . It is counsel's responsibility to monitor the progress of their cases by checking the court's docket. . . .

The need to do so is even greater where an appearance is made in the midst of ongoing litigation, when things may have transpired before counsel became involved.").

*Cf. Norgaard v. DePuy Orthopaedics, Inc.*, 121 F.3d 1074, 1075 (7th Cir. 1997) (ignorance of another court's docket is "nothing but negligence which does not justify untimely action.").

In this case, Mr. Horwitz seems to have been able to access the court's CM/ECF system for filing electronically even before his application for *pro hac vice* admission was granted. Mr. Horwitz's *pro hac vice* application was granted seven days after the motion to dismiss was filed (DE ## 104, 109), and he filed the motion to amend the complaint the day before that. Therefore, it appears that he could have looked at the system at any time to check if there were any motions pending in the case. He was certainly able to access the system when he wanted to file a motion; yet, he did not ask for leave to file a response to the motion to dismiss until more than a month later.

Mr. Horwitz also states that he had "multiple conferences" with plaintiffs' former counsel, Mr. Schumann, in anticipation of the December 28, 2009 statute of limitations. The court's CM/ECF electronic docket filing system shows that Mr. Schumann received electronic notice of the motion to dismiss. It appears to the court that Mr. Horwitz could have asked Mr. Schumann if there were any pending motions in the case before the current court and if any motions had been filed in the Northern District of Illinois before the case was transferred. Plaintiffs were also given notice of the motion to dismiss through the Individual Hammond Defendants' response to the

motion for leave to amend on January 12, 2010. (*See* DE # 111 at 2.) Even then, plaintiffs

did not ask for leave to respond to the motion to dismiss until almost a month later.

If the court accepts Mr. Horwitz's argument that excusable neglect exists when a

newly retained attorney fails to review a case docket after accepting the responsibility of

working on his clients' behalf, the court would be in the position of not being able to

enforce its deadlines every time new counsel has been retained. This would prevent the

court from being able to effectively manage its docket and greatly reduce the utility of

LOCAL RULE 7.1.

Further, Mr. Horwitz is asking for leave to file a response that had been prepared

for about seven months before he asked to submit it. Even with the pressure of

familiarizing himself with the new case and beating the statute of limitations, refiling an

existing document would not appear to be too time-consuming.

Second, plaintiffs' request for leave to file a reply to the Individual Hammond

Defendants' response to the motion to amend should also be denied. The reply was due

on January 11, 2010. The trial in which plaintiffs' counsel took part occurred on

January 25 to January 29, 2010, well after this deadline. This briefing schedule was

initiated by plaintiffs' own filing and it seems that they could have at least filed a

motion for an extension before the time period expired. Even more, as discussed below,

it is unlikely that any prejudice could result from the court's denial of this motion

because the motion to amend will be granted and the motion to dismiss will be denied.

Therefore, plaintiffs' motion for leave to file a response to the motion to dismiss and a

reply to the motion to amend (DE # 112) will be **DENIED**. However, because the

response to the first motion to dismiss does not have any effect on the outcome of the

motion to dismiss, there is no harm in the court referring to that document for

explanatory purposes. Therefore, the court has reviewed plaintiffs' response to the first

motion to dismiss and will refer to that document in ruling on this motion to dismiss.

**Motion to Dismiss**

The Individual Hammond Defendants argue that this case should be dismissed

as against them for lack of personal jurisdiction based on insufficient service of process

and insufficient process.[2] (DE # 104.) A RULE 12(b)(4) motion requesting that a suit be

dismissed for insufficient process challenges the form of process, while a RULE 12(b)(5)

motion requesting that a suit be dismissed for insufficient service of process challenges

the method of serving process. *See* 2 JAMES WM. MOORE ET AL., MOORE'S FEDERAL

PRACTICE ¶ 12.33[1] (3d ed. 2010).

A.       *Motion to dismiss for insufficient service of process*

The Individual Hammond Defendants argue that service of process here is

insufficient and that therefore, the court lacks personal jurisdiction over the Individual

Hammond Defendants. (DE # 105 at 6.) A case can be dismissed for insufficient service

---

[2] In their motion, the Individual Hammond Defendants state that Count IX of the
complaint, a claim of *respondeat superior* against the City of Hammond is not a proper
basis for a Section 1983 claim. (DE # 104 at 2.) They also assert that the claims against
the Individual Hammond Defendants in their official capacities are actually claims
against the municipality. (*Id.*) However, the City of Hammond has not filed a motion for
dismissal, so these issues do not need to be addressed at this time.

of process under FEDERAL RULE OF CIVIL PROCEDURE 12(b)(5). RULE 4(e) states that process can be served by: "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made"; or by delivering a copy of the summons and complaint to the person individually, to a suitable individual at the person's abode, or "to an agent authorized by appointment or by law to receive service of process." At the time that the service of process was made on the Individual Hammond Defendants, this case was before the federal district court for the Northern District of Illinois. Service of process was made in Indiana. Therefore, service of process could have been made pursuant to federal law, Illinois law, or Indiana law.

In this case, plaintiffs served process on the Individual Hammond Defendants by having a special process server deliver a copy of the summons and complaint for each individual to the Hammond City Hall Clerk's office at Hammond City Hall, 5925 Calumet Avenue, Hammond, Indiana, 46320. (DE # 61.) According to the affidavits of the special service process server, the summons and complaints were served upon each Individual Hammond Defendant by leaving a copy with Linda Marinkovic, "Secretary and Authorized Person" at the Hammond City Hall Clerk's office. (*See e.g.,* DE # 61 at 5.) The Individual Hammond Defendants are employed by the City of Hammond, but their actual place of employment is the Hammond Police Department which is geographically separate from Hammond City Hall. (DE # 105 at 5.)

In Illinois law, Section 2-208 states that personal service of summons may be made outside of Illinois if it is made upon an Illinois citizen or resident or a person who has submitted to jurisdiction of the Illinois courts. 735 ILL. COMP. STAT. 5/2-208(a) (2010). Service of process can be made "by personally serving the summons upon the defendant outside this State, as provided in this Act, with the same force and effect as though summons had been personally served within this State." 735 ILL. COMP. STAT. 5/2-209(d) (2010). The Individual Hammond Defendants argued in their first motion to dismiss that a federal court in Illinois does not have personal jurisdiction over them. (DE # 76 at 7-10.) Because a federal court sitting in Indiana clearly has personal jurisdiction over the Indiana Hammond Defendants, they no longer make this argument in their motion before this court and focus instead on the impropriety of the method of service of process. However, service of process cannot be proper under Illinois law if Illinois never had jurisdiction over the Individual Hammond Defendants, which it arguably did not. But in any case, as discussed below, the method of service of process was improper under Illinois law.

According to Section 2-208, when personal service is made outside of Illinois:

> [t]he service of summons shall be made in like manner as service within this State, by any person over 18 years of age not a party to the action. No order of court is required. An affidavit of the server shall be filed stating the time, manner and place of service.

735 ILL. COMP. STAT. 5/2-208(b) (2010). In Illinois, service of process on an individual can be made "by leaving a copy of the summons with the defendant personally" or "by

leaving a copy at the defendant's usual place of abode, with some person of the family

or a person residing there, of the age of 13 years or upwards, and informing that person

of the contents of the summons." 735 ILL. COMP. STAT. 5/2-203(a) (2010).

Illinois has allowed personal service upon an agent in some unusual

circumstances, but not in situations like the one in this case. *See Household Commercial*

*Fin. Servs. v. Trump*, 863 F. Supp. 735, 741 (N.D. Ill. 1994). As the Individual Hammond

Defendants point out, a federal court sitting in Illinois has determined that an

individual police officer cannot be served by serving process upon another police officer

or upon the officer's police department.[3] *See Collins v. City of Chi. Police Dep't*,

No. 95 C 4231, 1996 U.S. Dist. LEXIS 9557, at *10 (N.D. Ill. July 1, 1996) (unreported). In

*Collins*, the court found that to conclude that another police officer or the police

department were the agent for the police officer who was party to the case would be

---

[3] In the case of serving a City of Chicago police officer, it appears that service can be made by delivering a copy of the summons and complaint to the Chicago Police Department. *See e.g., Starling v. Cronin*, No. 98 C 7900, 2000 U.S. Dist. LEXIS 10971, at *4 n.2 (N.D. Ill. July 24, 2000) (unreported) (describing the procedure that Chicago put in place for serving process on individually sued police officers: the police department does not accept the summons and complaint on the behalf of the individually named defendants. Instead, plaintiffs can deliver the summons and complaint to the police department and if the documents sufficiently name the police officer, the police department will call the officer to personally pick up the documents); *Irvin v. City of Chi.*, No. 07 C 1207, 2007 U.S. Dist. LEXIS 77053, at * 7 (N.D. Ill. Oct. 15, 2007) (unreported) ("all Chicago Police Officers are served at the same address -- the Chicago Police Department's ('CPD') Office of Legal Affairs"). However, there is no evidence that the Hammond Police Department has a similar procedure in place or that the Individual Hammond Police Officers agreed to such a procedure.

"tantamount to holding that service on the police department is sufficient service on any individual officer. This would eviscerate the personal service requirements of the Federal Rules." *Id.* Thus, service of process was insufficient under Illinois and federal law.

The Individual Hammond Defendants argue that service of process was insufficient under Indiana law because plaintiffs cannot properly serve process on a defendant at a location of their employer which is not the location where the defendant actually works. (*Id.* at 8 (citing *Claus v. Mize*, 317 F.3d 725, 726-29 (7th Cir. 2003)).) Indiana law allows for the same three methods as federal law and allows for service of an individual to be made upon that individual or upon an individual acting in a representative capacity by sending a copy of the summons and complaint by registered or certified mail or other public means to the individual's residence, place of business, or place of employment. IND. R. TR. P. 4.1(A) (2010).

In *Lapalme v. Romero*, 621 N.E.2d 1102, 1105 (Ind. 1993), the Indiana Supreme Court found that INDIANA RULE OF TRIAL PROCEDURE 4.1 does not authorize "copy service by leaving the summons and complaint at the place of employment." The court explained that under RULE 4.1(A), service on an individual can be made by delivering a copy of the complaint to him personally, having a process server leave a copy of the summons and complaint at the individual's dwelling house or usual abode, or sending a copy of the complaint by registered or certified mail or other public means to the individual's residence, place of business, or place of employment. *Id.* at 1105. The court

also explained that while the INDIANA RULES OF TRIAL PROCEDURE authorize certain people, such as an individual's agent, to accept service on behalf of an individual, an individual's "employer is not on the list" of persons having authority to accept service on behalf of an individual. *Id.* at 1106. Accordingly, in *Lapalme* the Indiana Supreme Court held that the service of process upon an individual by delivering a copy of the summons and complaint to his employer was insufficient. *Id.* at 1105-06.

If plaintiffs here had sent a copy of the complaint and summons by registered or certified mail or other public means to the Individual Hammond Defendants' place of employment, that service may possibly have been sufficient under RULE 4.1(A)(1).[4] Instead plaintiffs attempted to serve process upon the Individual Hammond Defendants at their place of employment by copy service, a method expressly found to be unauthorized by the Indiana Supreme Court in *Lapalme*.

---

[4] In fact, even if plaintiffs had sent a copy of the complaint and summons via registered mail, certified mail, or other public means to the City of Hammond Clerk's office, that process of service would be unlikely to be sufficient for two reasons. First, in order to accept process for the Individual Hammond Defendants under INDIANA TRIAL PROCEDURE RULE 4.16, titled "Summons: Duties of persons to aid in service," Linda Marinkovic must have had the authority to accept service on their behalf. *Lapalme,* 621 N.E.2d at 1106 ("We construe the clause in T.R. 4.16(B) that states, 'Anyone accepting service for another person . . .' to mean anyone with authority to accept service for another person."). No showing has been made that Ms. Marinkovic had authority to accept service for any of the Individual Hammond Defendants. Second, the City of Hammond Clerk's office is geographically separate from the Hammond Police Department which appears to be the Individual Hammond Defendants' place of employment. The Seventh Circuit has expressed the view that "place of employment" in INDIANA RULE OF TRIAL PROCEDURE 4.1(A)(1) "connotes the physical location at which the defendant works." *Claus v. Mize,* 317 F.3d 725, 727 (7th Cir. 2003).

Thus, in order for service to be sufficient under federal law, Linda Marinkovic of the Hammond City Hall Clerk's office must have been an agent of the Individual Hammond Defendants as provided under Indiana or federal law by rule, statute, or valid agreement. IND. R. TR. P. 4.1(A)(4); FED. R. CIV. P. 4(e). For service on an agent to be permissible under federal law the agent must be authorized by appointment or law to accept service on a party's behalf. In order for a court to find that a person acted as a party's agent by appointment or agreement, there must be evidence of that appointment or agreement. *Schultz v. Schultz*, 436 F.2d 635, 638-39 (7th Cir. 1971); *Bennet v. Circus U.S.A.*, 108 F.R.D. 142, 147, 149 (7th Cir. 1985); *Poteet v. Bethke,* 507 N.E.2d 652, 654 (Ind. Ct. App. 1987).

In *Cross v. City of Chicago*, a federal court in the Northern District of Illinois stated that the City of Chicago could not accept service of process on behalf of individual police officers. No. 99 C 3443, 2001 U.S. Dist. LEXIS 21476, at *5 (N.D. Ill. Dec. 17, 2001) (unreported). In that case, the City of Chicago refused to accept service on behalf of the individual officers and its counsel wrote a letter to plaintiff's attorney suggesting that he contact the Office of Superintendent of Police for aid with serving the officers. Other federal courts have found that service upon a person not authorized as a party's agent is insufficient even when that unauthorized person accepts the documents. *See e.g., Branch v. Costa*, No. 00 C 4765, 2000 U.S. Dist. LEXIS 16864, at *5 (N.D. Ill. Nov. 3, 2000) (unreported); *Saniat v. City of Chi.*, No. 96 C 5191, 1998 U.S. LEXIS 16999, at *16-17 (N.D. Ill. Oct. 22, 1998) (unreported) (stating that service on the Chicago Police

Superintendent's Office was insufficient to serve an individual police officer when the officers and the city did not explicitly agree to that and the Illinois and federal rules did not allow for that method of service).

Further, as discussed above, federal district courts in the Seventh Circuit have found that it cannot be assumed that the police department is the agent for service of process of every individual police officer. *See e.g., Collins*, 1996 U.S. Dist. LEXIS 9557, at *10 (stating that to conclude that either the police officer or police department were the agent for the police officer who was party to the case would be "tantamount to holding that service on the police department is sufficient service on any individual officer. This would eviscerate the personal service requirements of the Federal Rules.").

Here, no evidence has been presented that the Hammond City Hall Clerk's office staff members were authorized by law, agreement, or assignment to accept service for the Individual Hammond Defendants. The affidavit of the special process server labels the person who accepted service, Linda Marinkovic, as "Secretary and Authorized Person." (DE # 61 at 1.) However, there is no explanation of what this assertion is based on, what it means, or if anyone besides the special process server is making this claim. There is no showing, even in plaintiffs' response to the first motion to dismiss, that any of the Individual Hammond Defendants authorized Marinkovic to serve as their agent for service of process. Therefore, the court finds that the service upon the Individual Hammond Defendants was insufficient under Indiana and federal law.

The next question is whether the defects in the service of process can be cured through Rule 4.15(F) of the Indiana Rules of Trial Procedure. This rule states that:

> [n]o summons or the service thereof shall be set aside or be adjudged insufficient when either is reasonably calculated to inform the person to be served that an action has been instituted against him, the name of the court, and the time within which he is required to respond.

In *Lapalme*, the Supreme Court of Indiana held that because Rule 4.15(F) "only cures technical defects in the service of process," it cannot cure a total failure to serve process as it found had occurred in that case. 621 N.E.2d at 1106. Thus the court found that copy service at a defendant's place of employment was a failure of service incurable under Rule 14.5(F).

In *Claus v. Mize*, the Seventh Circuit, citing *Lapalme*, concluded that sending a summons by certified mail to the headquarters of a defendant's employer rather than to the location where the defendant actually worked was not likely to be a technical defect curable under Rule 4.15. 317 F.3d 725, 728 (7th Cir. 2003). Even so, the court continued on to determine whether the service of process there could have been "reasonably calculated to inform" the defendant that an action had been started against him. *Id.* In determining that the service of process did not meet this standard, the court found that it is not "unfair to require a plaintiff who chooses to serve a defendant at his place of employment to serve the defendant where he actually works." *Id.* The court also found that there must be a reasonable degree of certainty that the chosen method would actually get the papers to the defendant. *Id.* at 728-29.

In this case, like in *Lapalme*, plaintiffs attempted to serve the Individual Hammond Defendants through an improper manner of service - copy service at their place of employment, the Hammond Police Department. Also, as in *Claus*, plaintiffs did not send the summons to the Individual Hammond Defendants' actual place of employment (DE # 105 at 5-6) but instead sent them to Hammond City Hall. These defects are most likely enough to find that there was a complete failure of service under RULE 4.15 rather than a curable technical defect. But even if there was not a complete failure of service, this court cannot find that the chosen method of service was reasonably calculated to inform the Individual Hammond Defendants of the action against them. No showing has been made, even in plaintiffs' response to the first motion to dismiss, that there was a reasonable certainty that the summons and complaint would actually reach the Individual Hammond Defendants after being delivered to City Hall. Thus, the court finds that the service of process upon the Individual Hammond Defendants was insufficient and therefore service of process was not made within the 120 days provided by RULE 4(m).

      B.    *Extension of time for service of process under RULE 4(m)*

Since the service of process on the Individual Hammond Defendants was insufficient, the court must now consider whether the case should be dismissed or the time for service of process should be extended pursuant to FEDERAL RULE OF CIVIL PROCEDURE RULE 4(m). RULE 4(m) provides that if the plaintiff shows good cause for the failure to serve process within 120 days of the complaint's filing, the court "must extend

the time for service for an appropriate period." Plaintiffs have the burden of showing

good cause. *Panaras,* 94 F.3d at 341 (citing *Geiger v. Allen*, 850 F.2d 330, 333

(7th Cir. 1988)). As plaintiffs did not file a timely response to the motion to dismiss, they

have not shown good cause for failing to properly serve process on the Individual

Hammond Defendants. However, as explained below, the court has the discretion to

grant a permissive extension of the time to serve process.

Dismissals pursuant to RULE 4(m) are typically dismissals without prejudice, but

in cases such as this one where the statute of limitations has expired,[5] they effectively

become dismissals with prejudice. Thus, courts can allow extensions under RULE 4(m)

even when plaintiffs failed to act with due diligence. *See e.g., Saniat v. City of Chi.*,

No. 96 C 5191, 1998 U.S. LEXIS 16999, at *16-17 (N.D. Ill. Oct. 22, 1998) (unreported);

Advisory Committee Note to the 1993 Amendments to FED. R. CIV. P. 4(m) ("Relief may

be justified, for example, if the statute of limitations would bar the refiled action, or if

the defendant is evading service or conceals a defect in attempted service.").

Accordingly, absent a showing of good cause, courts must determine whether a

permissive extension should be granted. *Panaras v. Liquid Carbonic Indus. Corp.,*

---

[5] The incident upon which this action is based occurred on December 28, 2007. (DE # 55 at 5-6.) Plaintiffs bring this action in this court under 28 U.S.C. § 1983. (*Id.* at 3.) For Section 1983 claims, federal courts use the state's statute of limitations for personal injury suits, which for Indiana is two years. *See* IND. CODE § 34-11-2-4 (2010); *Malone v. Corr. Corp of Am.*, 553 F.3d 540, 542 (7th Cir. 2009) (citing *Wilson v. Garcia*, 471 U.S. 261 (1985)). *See also Owens v. Okure*, 488 U.S. 235, 249-250 (U.S. 1989) ("We . . . hold that where state law provides multiple statutes of limitations for personal injury actions, courts considering § 1983 claims should borrow the general or residual statute for personal injury actions.")

94 F.3d 338, 340 (7th Cir. 1996) (citing Advisory Committee Note to the 1993 Amendments to FED. R. CIV. P. 4(m) (stating that RULE 4(m) "authorizes the court to relieve a plaintiff of the consequences of an application of this subdivision even if there is no good cause shown")).

In determining whether to grant a permissive extension, courts can weigh the following factors: a statute of limitations bar, prejudice to defendant, actual notice of the lawsuit, eventual service, the plaintiff's conduct, whether the defendant evaded service, and whether the defendant concealed a defect in attempted service. *Troxell v. Fedders of N. Am.*, 160 F.3d 381, 383 (7th Cir. 1998); *Panaras*, 94 F.3d at 341.

Here, the statute of limitations ran on December 28, 2009, so a dismissal of the case under RULE 4(m) would bar plaintiffs from bringing the suit again. It is important to weigh the statute of limitations bar to plaintiffs' claims against any harm to the Individual Hammond Defendants caused by extending the time for service. The Seventh Circuit stated that most judges would probably allow late service when the

> defendant does not show any actual harm to its ability to defend the suit as a consequence of the delay in service, where indeed it is quite likely that the defendant received actual notice of the suit within a short time after the attempted service, and where moreover dismissal without prejudice has the effect of dismissal with prejudice because the statute of limitations has run since the filing of the suit.

*Coleman v. Milwaukee Bd. of Sch. Dirs.*, 290 F.3d 932, 934 (7th Cir. 2002). The court stated that the balance of hardships in that case would weigh towards showing leniency to the plaintiffs. (*Id.*)

Here the balance of hardships weighs in plaintiffs' favor. There is no showing that the delay in service will harm the Individual Hammond Defendants' ability to defend the suit. It is not absolutely clear whether they had notice of the suit, but it is likely that they did. They are represented by counsel, the same counsel that represents the City of Hammond, and they have been active in the case since they first filed their motion to dismiss on June 12, 2009. (DE # 75.) The Individual Hammond Defendants that will remain in the suit after plaintiffs filed their Second Amended Complaint (DE # 108), before the statute of limitations ran, are all partially named by either first or last name because that version of the complaint drops "Unknown Police Officers" from the suit. On the other hand, the Individual Hammond Defendants have still never actually been served.

Plaintiffs' conduct militates towards allowing a permissive extension. First, unlike in many cases in which a permissive extension was denied, plaintiffs here did not wait until towards the end of the 120 days to attempt service of process. *See e.g., Coleman*, 290 F.3d at 934-35 (in a case where many other factors militated towards granting a permissive extension, judge was within her discretion to deny it because plaintiff could not explain why she waited until the 115th day to attempt service). Plaintiffs here filed their First Amended Complaint naming or partially naming the Individual Hammond Defendants on March 31, 2009. (DE # 55.) They issued the summons to the partially named and fully named defendants the next day. (DE ## 57, 58.) The summons were issued on April 1, 2009 and served on April 15, 2009.

(DE # 61 at 1.) The affidavits of the special process server were signed on April 16, 2009 (*id*.) and filed through the court's docketing system on April 20, 2009.

Plaintiffs' response to the first motion to dismiss reveals that they thought they had properly served process on the Individual Hammond Defendants pursuant to INDIANA RULE OF TRIAL PROCEDURE 4.1(A)(1). (DE # 81 at 8.) Thus, plaintiffs completed what they mistakenly thought constituted service of process within twenty days of filing their complaint.

Second, a finding that plaintiffs mistakenly believed the service of process was correct has also weighed towards granting a permissive extension. *Compare United States v. McLaughlin*, 470 F.3d 698, 699 (7th Cir. 2006) (district court did not abuse its discretion in granting a permissive extension when the person sent to deliver the summons for the plaintiff mistakenly thought that process of service could be effected by leaving the documents with an adult at the defendant's place of business and once plaintiff realized the mistake it immediately attempted to fix it) *with Troxell*, 160 F.3d at 383 (court was within its discretion to deny a permissive extension when the plaintiff mailed defendants waiver of service forms and waited more than 240 days with no acknowledgment of receipt of those forms before formally serving defendants).

Like in *McLaughlin*, plaintiffs here mistakenly thought that the method of service they used was correct under INDIANA RULE OF TRIAL PROCEDURE 4.1(A)(1). (*See* DE # 81 at 8.) Unlike *McLaughlin*, they did not immediately work to correct their potential

mistake once it was pointed out through the motion to dismiss on the seventy-third day

for service. However, at that time, the 120 days for service had not expired and the issue

of the sufficiency of the service of process was before the court in the Northern District

of Illinois.

Seventy-three days after the First Amended Complaint was filed, on

June 12, 2009, the Individual Hammond Defendants filed their motion to dismiss due to

improper venue, lack of personal jurisdiction, insufficient process, and insufficient

service of process. (DE # 75 at 2-3.) While the motion was pending, plaintiffs awaited a

finding of whether the process and service of process had been sufficient. Before the

court ruled on the motion to dismiss for improper venue, it was not clear whether the

case would be dismissed entirely or if it would proceed in Illinois or Indiana. Thus there

was no determination of what set of service of process rules would apply if plaintiffs

did attempt to serve process again. The district court for the Northern District of Illinois

ruled on the motion to dismiss on October 22, 2009 (DE ## 92, 93), 205 days after the

First Amended Complaint was filed. So by the time the district court ruled on the

motion to dismiss, the 120 days for service of process had expired. When the district

court for the Northern District of Illinois ruled on the motion, it only decided the issue

of improper venue and did not rule on the issues of insufficient process and service of

process. (*Id.*) Once the case was transferred to the Northern District of Indiana, on

October 22, 2009 (DE # 94), the Individual Hammond Defendants re-filed their motion

to dismiss on December 21, 2009 (DE # 104), seven days before the statute of limitations was to expire.

Further, federal courts have found that both good cause for extending the time for service of process and the need for a permissive extension existed when the plaintiffs tried a variety of means to serve individual police officers and the defendants used "the service of process issue to delay and, if possible, bar" the plaintiffs' claims. *Cooper v. Harris*, No. 98 C 1623, 1624, 1999 U.S. Dist. LEXIS 1625, at *6-8 (N.D. Ill. Feb. 12, 1999) (unreported). There is some indication that the Individual Hammond Defendants have attempted to evade service at least indirectly. After filing their motion to dismiss in the Northern District of Illinois, on July 22, 2009, 113 days after the First Amended Complaint was filed, the Individual Hammond Defendants filed a motion for a protective order in that court. (DE # 85.) They asked the court to enter an order stating that they did not have to respond to plaintiffs' May 28, 2009 discovery requests. (*Id.* at 1.) They state that this issue was also raised at a June 17, 2009 status hearing in the Northern District of Illinois and during in-person and telephonic communication between the parties' attorneys shortly thereafter. (*Id.* at 2.)

Further, documents attached to plaintiffs' response to the Individual Hammond Defendants' first motion to dismiss show that plaintiffs attempted to get information about the defendants' complete names even before the First Amended Complaint was filed. In a March 25, 2009 letter, plaintiffs' counsel wrote to the Individual Hammond Defendants' counsel informing him that plaintiffs were adding the Individual

26

Hammond Defendants to the amended complaint. (DE # 81-6 at 2.) The letter states that in some cases the parties' first names are unknown and asks counsel for the Individual Hammond Defendants to "[p]lease provide first names where applicable, so that they may be accurately identified." (*Id.*) There is no showing that the Individual Hammond Defendants obliged this request.

Plaintiffs' May 28, 2009 discovery requests, made in the form of written interrogatories issued 58 days after the First Amended Complaint was filed, asked the defendants: "As to each individually identified City of Hammond police officer named in the caption of Plaintiffs' First Amended Complaint, identify the full name, badge or identification number, position of employment, present height, weight and date of birth." (*Id.* at 7.) The first part of this information likely would have helped plaintiffs to serve the Individual Hammond Defendants properly. Instead, on July 27, 2009, 118 days after the First Amended Complaint was filed, the court for the Northern District of Illinois struck the request for a protective order as moot and stated that it would set any discovery deadlines for after the rulings on the motion to dismiss. (DE # 88.) Thus, plaintiffs were not able to procure identification information that would have facilitated process, as discussed below, and then serve process based on this information.

By filing the motion to dismiss based in part on insufficient service of process and insufficient process, the Individual Hammond Defendants have attempted to use the defect in the service of process to bar the claims and the time that the courts have taken to rule on the motion to dismiss has facilitated those efforts. Accordingly, the

27

court will **GRANT** plaintiffs a permissive extension of 30 days to serve process on the Individual Hammond Defendants.

C.      *Motion to dismiss for insufficient process*

Pursuant to FEDERAL RULE OF CIVIL PROCEDURE 12(b)(4) a case can be dismissed for insufficient process. A summons must name the court and the parties and be directed to the defendant. FED. R. CIV. P. 4(a). Here, the summons name the Individual Hammond Defendants by what appears to be either first or last name (although the complaint uniformly states that their last names are unknown). The complaint also includes "Unknown Police Officers." Generally, courts do not favor the use of partial-identifiers such as "John Doe" or "Unknown Police Officers." *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980 ). However, courts will allow this type of identification temporarily when the identity of defendants will not be known prior to the filing of a complaint and discovery is needed to identify the unknown defendants. *Id.* In fact, the Seventh Circuit has stated "[w]hen . . . a party is ignorant of defendants' true identity, it is unnecessary to name them until their identity can be learned through discovery or through the aid of the trial court." *Maclin v. Paulson*, 627 F.2d 83, 87-88 (7th Cir. 1980).

In fact, the Seventh Circuit has held that "when the substance of a pro se civil rights complaint indicates the existence of claims against individual officials not specifically named in the caption of the complaint, the district court must provide the plaintiff with an opportunity to amend the complaint." *Cf. Donald v. Cook County*

*Sheriff's Dep't*, 95 F.3d 548, 555 (7th Cir. 1996). If a plaintiff "faces barriers to determining the identities of the unnamed defendants, the court **must** assist the plaintiff in conducting the necessary investigation." *Id.* (emphasis added). Allowing pretrial discovery for the identification of individual defendants is also appropriate in cases involving plaintiffs with representation by counsel. *See Billman v. Ind. Dep't of Corr.*, 56 F.3d 785, 789 (7th Cir. 1995) (stating that the principle that plaintiffs are entitled to pretrial discovery to identify wrongdoers "applies to any case in which, usually because the plaintiff has been injured as the consequence of the actions of an unknown member of a collective body, identification of the responsible party may be impossible without pretrial discovery"); *Palmer v. Bd. of Educ.*, 46 F.3d 682, 688 (7th Cir. 1995).

Plaintiffs do not have an indefinite amount of time in which to identify defendants' proper names. *Aviles v. Vill. of Bedford Park*, 160 F.R.D. 565, 567 (N.D. Ill. 1995). Usually, this task should be completed within the 120 days given by the rules for service of process. *Id.* Nonetheless, after articulating this rule, the court in *Aviles v. Village of Bedford Park* allowed the plaintiff more time to identify and serve the unknown defendants when he had undertaken discovery to identify the defendants even though he never attempted to identify them until they filed a motion to dismiss. *Id.* at 567-68. The court was hesitant to dismiss the lawsuit on procedural grounds when discovery requests aimed at identifying the proper names of the defendants were pending. *Id.* at 568.

In this case, there are several reasons to afford plaintiffs some leniency. First, it should be noted that most of the Individual Hammond Defendants are partially named, either by their first or last names. The First Amended Complaint names "Unknown Police Officers, individually and in their official capacity as law enforcement officers of the City of Hammond, Indiana Police Department." (DE # 55 at 2.) However, plaintiffs' Second Amended Complaint, which was filed within the statute of limitations period and which this order gives plaintiffs leave to file, no longer lists the "Unknown Police Officers." Instead, it adds four officers identified by last name only. (DE # 108-2 at 1.) Thus all of the police officers that will remain in the case are at least partially named.

Second, as discussed above, plaintiffs attempted to obtain the full names of the Individual Hammond Defendants before naming them in the First Amended Complaint. Plaintiffs were not obligated to undertake discovery to identify the unknown defendants during the period in which the courts were ruling on the motions to dismiss. *Murray v. Chicago,* 634 F.2d 365, 366 (7th Cir. 1980) (stating "it is common practice for lawyers to defer discovery until after determination of motions which might make discovery otiose by disposing of the case upon controlling questions of law"). As noted above, the motion to dismiss in this case was filed on the seventy-third day for service of process.

Even so, as of May 28, 2009, plaintiffs had discovery requests pending that would have helped them identify the full names of the Individual Hammond Defendants. Even more, as mentioned earlier, the Individual Hammond Defendants attempted to

block these discovery requests by asking for a protective order to avoid answering discovery requests until their motion to dismiss was ruled upon. Thus, some pretrial discovery to identify the full names of the Individual Hammond Defendants is appropriate in this case.

    D.    *Relation back of a complaint fully naming the Individual Hammond Defendants*

The Individual Hammond Defendants argue that while plaintiffs may be able to name an unidentified party as "Unknown Police Officer" or to partially identify a party for a limited time, plaintiffs will eventually need to identify the intended natural person, name the person in a summons, and serve him/her with process. (DE # 105 at 9.) This is correct. *See e.g., Forman v. Richmond Police Dep't*, 104 F.3d 950, 965 (7th Cir. 1997) (dismissing claims against John Doe officers because plaintiffs did not name them within the two year statute of limitations). Since the statute of limitations has expired, in order for plaintiffs to properly identify the Individual Hammond Defendants and have them included in the suit, plaintiffs will need to be able to file an amended complaint with the proper names of the Individual Hammond Defendants and have that complaint relate back to the previously filed complaints.

FEDERAL RULE OF CIVIL PROCEDURE 15(c) provides a method by which a plaintiff can change or add a defendant after the statute of limitations has run out. *See Delgado-Brunet v. Clark*, 93 F.3d 339, 342-44 (7th Cir. 1996) (explaining that an amended complaint filed after the statute of limitations and identifying previously unnamed

individual defendants can be allowed under either the state tolling laws or the federal rule for relation back, RULE 15(c)); *see also Moore v. Indiana,* 999 F.2d 1125, 1130 (7th Cir. 1993) ("In a federal-question case borrowing a state statute of limitations, federal law provides the requirements for the relation back of an amendment, while state law determines the more basic question of whether the substance of the amendment mandates that it relate back in order to avoid the applicable statute of limitations."). The rule allows an amended complaint changing a party or naming a party after the statute of limitations has expired to relate back to the filing date of an earlier complaint if certain conditions are met. These conditions are: 1) the claim arises out of the same conduct, transaction, or occurrence set out in the original pleading, and 2) within the

> period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by the amendment: (i) received such notice of the action that it will not be prejudiced in defending on the merits; and (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

FED. R. CIV. P. 15(c)(1)(C). Amendments under RULE 15(c) are to be "freely allowed." *Staren v. Am. Nat'l Bank & Trust Co.,* 529 F.2d 1527, 1263 (7th Cir. 1976).

The notice, knowledge, and mistake requirements of RULE 15(c)(1)(C) are satisfied as long as they are met within the time period allowed for service by RULE 4(m). *See Delgado-Brunet,* 93 F.3d at 344. In this case, as explained above, this court is granting a permissive extension to allow plaintiffs to complete service of process. Therefore, if plaintiffs serve sufficient process within the time specified by this order,

they can amend their complaint and have it relate back. *See e.g., Wilke v. Bob's Route 53 Shell Station*, 36 F. Supp. 2d 1068, 1073 (N.D. Ill. 1999) (finding that the requirements of RULE 15(c)(1)(C), then 15(c)(3), were met within the time frame of RULE 4(m) when parties were added and served by an amendment filed after the statute of limitations expired but within the time provided by a permissive extension under RULE (4)(m)); *Baltrunas v. Sheahan*, 161 F.R.D. 56, 60 (N.D. Ill. 1995) ("In allowing a name-correcting amendment within the time allowed by Rule 4[m] . . . , this rule allows not only the 120 days specified in that rule, but also any additional time resulting from any extension ordered by the court pursuant to that rule, as may be granted."); *Heiser v. Ass'n of Apartment Owners*, 848 F. Supp. 1482, 1488 (D. Haw. 1993) (finding that a complaint filed after the statute of limitations adding new defendants related back when the defendants were served process and given notice of the lawsuit within the extended period given for service of process by the magistrate judge). *Cf. Donald*, 95 F.3d at 557-58 (allowing pro se plaintiff to amend his complaint after the statute of limitations had expired to add individual prison worker defendants who had not been served within the 120 day period when there was good cause for the failure of service and the original complaint named only the institution).

The court will **DENY** the Individual Hammond Defendants' motion to dismiss. (DE # 104.) The parties have 60 days to complete pretrial discovery aimed at properly identifying the Individual Hammond Defendants. Plaintiffs then have another 30 days

to serve process on the Individual Hammond Defendants and to submit an amended complaint fully identifying the Individual Hammond Defendants.

## Motion to Amend

Courts should "freely give leave [to amend] when justice so requires," FED. R. CIV. P. 15(a)(2); but leave to amend is not granted automatically. *Airborne Beepers & Video, Inc. v. AT&T Mobility LLC*, 499 F.3d 663, 666 (7th Cir. 2007). Courts may deny leave to amend if there is an apparent or declared reason for doing so, such as "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment or futility of amendment." *Liu v. T&H Machine*, 191 F.3d 790, 794 (7th Cir. 1999) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

Undue delay alone is insufficient to support denial of leave to amend, but it may militate towards a denial when combined with another factor, often unfair prejudice to the nonmoving party. *Dubicz v. Commonwealth Edison Co.*, 377 F.3d 787, 793 (7th Cir. 2004). When determining whether undue delay has occurred, courts will consider the similarity of the factual basis for the claims in the original complaint and that for the new claims raised in the amended complaint, the moving party's explanation for waiting to raise the new claims, whether the moving party is attempting to introduce a new theory of the case, and whether granting the motion to amend will

require new or duplicated discovery efforts. *Bethany Pharmacal Co. v. QVC, Inc.*, 241 F.3d 854, 861 (7th Cir. 2001); *Johnson v. Methodist Med. Ctr. of Ill.*, 10 F.3d 1300, 1304 (7th Cir. 1993); *Murphy v. White Hen Pantry Co.*, 691 F.2d 350, 353-354 (7th Cir. 1982).

The amount of unfair prejudice to the nonmoving party is a "significant factor" in determining whether to grant leave to amend, and it is often considered together with undue delay. *Dubicz*, 377 F.3d at 792. Undue prejudice has been found to exist when an amended complaint would require the non-moving party to engage in substantial discovery, when it would deprive the non-moving party of a summary judgment victory, and when the moving party intended to introduce an entirely new legal theory that would require discovery to be reopened, forcing the non-moving party to "duplicate its efforts." *Johnson*, 10 F.3d at 1304; *Murphy*, 691 F.2d at 353-54.

Plaintiffs are asking for leave to amend their complaint in order to add a new plaintiff, Roy Goodman, Jr.[6] (DE # 108 at 2.) Plaintiffs ask to add Roy Goodman Jr. as a plaintiff for the existing counts of excessive force and false arrest (DE # 55) and to add new legal theories of malicious prosecution and "Equal Protection Class of One" on behalf of Roy Goodman Jr. (DE # 108 at 4.) Plaintiffs argue that these theories arise out of "the same arrest which formed the subject matter or the excessive force and false

_____

[6] In their motion to amend, plaintiffs refer to the new plaintiff as both "Roy Goodman Sr." (DE # 108 at 2) and "Roy Goodman Jr." (*Id.* at 4.) In the proposed Second Amended Complaint, he is referred to as "Roy Goodman Jr." in the new caption and throughout the document. (DE # 108-2 at 1, 6, 9.) Therefore the court has concluded that the proper name of the person whom plaintiffs are asking to add to the complaint is "Roy Goodman Jr."

arrest claims" lodged by the existing plaintiffs and that they therefore arise out of the same transaction or occurrence as the claims in the First Amended Complaint. (DE # 108 at 4.) Plaintiffs state that the case is still in the early stages of discovery, with some written discovery exchanged but no depositions taken. (*Id.* at 3.) They argue that granting them leave to amend the complaint will not result in any prejudice, undue burden, or surprise to the defendants. (*Id.* at 3, 4.) Plaintiffs explain that the amendment is necessary because after filing the complaint (they do not specify whether they are referring to the original complaint or the First Amended Complaint), they have gained further information showing that the criminal allegations against Roy Goodman Jr. "were false, without probable cause and, upon information and belief, due to coercive investigatory techniques applicable to the witnesses that were secured in the photographic line up used as a basis" for his arrest. (*Id.* at 2.)

The proposed Second Amended Complaint also appears to change the First Amended Complaint in ways not discussed by plaintiffs. First, the proposed Second Amended Complaint no longer lists "Unknown FBI Agents" or "Unknown Police Officers" as defendants. (DE # 108-2 at 1-2.) Instead, it has added new partially named Hammond defendants and FBI defendants to the complaint. Four of these defendants, Officers Sims, Ramsey, Glavach, and Walker, are listed as both FBI and Hammond defendants. (*Id.* at 1.) Another six, are listed as only FBI defendants. It is likely that counsel has been able to identify some of the previously unknown officers and agents. Second, the entire complaint has gone from thirty-three pages in length to fifteen pages.

Part of the reason for this is that the new complaint has assigned titles to categories of defendants rather than listing each defendant separately each time it names the defendants. Another reason for this shortened length is that plaintiffs have omitted some of their previous allegations about jurisdiction, venue, and parties. (DE # 55 at 3-4; DE # 108-2 at 3.) Their statement of facts is also shorter than it was in the last complaint. (DE # 55 at 5; DE # 108-2 at 4.)

Third, the stated legal theories in the Second Amended Complaint are somewhat different than those in the First Amended Complaint. The First Amended Complaint listed legal theories of false arrest and illegal imprisonment, excessive force, failure to intervene and prevent excessive force, conspiracy to deprive plaintiffs of constitutional rights, battery, assault, false imprisonment, intentional infliction of emotional distress, *respondeat superior,* and indemnification, all in violation of the Fourth and Fourteenth Amendment of the Constitution, 42 U.S.C. § 1983, and *Bivens*. (DE # 55.) The Second Amended Complaint lists legal theories of excessive force pursuant to 42 U.S.C. § 2083 and the Fourth Amendment, excessive force pursuant to *Bivens* and the Fourth Amendment, false arrest pursuant to 42 U.S.C. § 2083 and the Fourth Amendment, false arrest as a state law claim, 42 U.S.C. § 2083 conspiracy, *Bivens* conspiracy, 42 U.S.C. § 2083 and *Bivens* unlawful entry into property, claim against the United States of America, claim against the City of Hammond, claim against Calumet City, and supplementary claim for *respondeat superior* as to the City of Hammond and Calumet City. (DE # 108-2.) As stated earlier, plaintiffs are also adding legal theories of malicious

prosecution and equal protection, class of one. (*Id.*) Plaintiffs have plead slightly different allegations for these legal theories. However, the legal theories and their bases are largely the same as those in the First Amended Complaint. No defendant has filed a response objecting to the new organization of plaintiffs' legal theories. Thus, the court does not find a problem with the three changes noted above.

The Individual Hammond Defendants have filed a response objecting to plaintiffs' motion for leave to amend. (DE # 111.) Their only arguments are that "[p]laintiffs' request to amend is an abandonment of the First Amended Complaint" and that because plaintiffs have not responded to the Individual Hammond Defendants' motion to dismiss, that motion should be granted before the court considers whether plaintiffs have established a proper basis" for leave to amend their complaint. (DE # 111 at 3.) If it were true that a motion for leave to file an amended complaint was an abandonment of the existing complaint, then every denial of leave to amend would result in the dismissal of a case. This is not the case, so the court rejects that argument.

The Individual Hammond Defendants do not make any arguments as to whether a proper basis for leave to amend has been established. They do not argue that amending the complaint will cause undue prejudice to them or any other defendant. No other defendants have objected to plaintiffs' motion for leave to amend.

The motion for leave to amend is unlikely to cause delay because during the time it was filed, the parties were briefing and waiting for the ruling on the motion to dismiss. Significantly, there is no showing that allowing the amendment will cause undue prejudice to the defendants. Plaintiffs explain that they have learned new information that makes the amendment necessary. As of yet, very little discovery has taken place in this case, and no discovery efforts will need to be repeated. The amended complaint will introduce new legal theories into the case, but the parties will be able to address the new and old legal theories together after they begin discovery. For the above reasons, plaintiffs' motion for leave to amend their complaint (DE # 108) will be **GRANTED**.

In sum, the motion for leave to file a reply and response (DE # 112) is **DENIED**, the motion to dismiss (DE # 104) is **DENIED**, and the motion for leave to amend the complaint (DE # 108) is **GRANTED.** It is **ORDERED** that the parties have 60 days, until August 11, 2010, to complete pretrial discovery to fully identify the partially named Individual Hammond Defendants and plaintiffs have an additional 30 days, until September 10, 2010, to serve process on the fully named Individual Hammond Defendants and to file an amended complaint properly naming them.

**SO ORDERED.**

Date: July 12, 2010

s/James T. Moody
JUDGE JAMES T. MOODY
UNITED STATES DISTRICT COURT