# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
### HAMMOND DIVISION

| | |
|---|---|
| ROY GOODMAN JR., | ) |
| ROY GOODMAN III, | ) |
| RENEE GOODMAN, | ) |
| RENIECE GOODMAN, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | )  No. 2:09 CV 355 |
| | ) |
| ADAM CLARK, *et al.*, | ) |
| | ) |
| Defendants. | ) |

## OPINION AND ORDER

This matter is before the court on defendants City of Hammond, Christopher Berdine, Ralph Bogie, Robert Bunner, Raymond Finley, Rudy Grasha, Brian Miller (also incorrectly sued as "Officer Edward"), John Ratajczak, Thomas Strabavy, Patrick Vicari, and Timothy Walczak's ("the Remaining Hammond Defendants") motion for summary judgment (DE # 321) and defendants Christopher Crocker, Carrie J. Landau, Christopher Soyez, and Lori Warren's ("the FBI Defendants") motion for summary judgment (DE # 327). Plaintiffs filed responses to the two motions. (DE ## 335, 336.) The Remaining Hammond Defendants filed a reply brief (DE # 342), as did the FBI Defendants (DE # 341). Accordingly, both summary judgment motions have been fully briefed and are ripe for ruling.

## I. BACKGROUND[1]

On December 24, 2007, plaintiff Roy Goodman, Jr., was present at the River Oaks Shopping Center in Calumet City, Illinois, with his family members: daughter Reniece Goodman, son Roy Goodman, III, and wife Renee Goodman. (DE ## 323-11 at 49; 323-12 at 23; 323-14 at 27–28.) Roy Goodman, III, and Reniece Goodman were admittedly present in the JC Penny store at the River Oaks Center that day. (DE ## 323-12 at 23; 323-13 at 20.)

That same day, an armed robbery occurred at the JC Penny store. (DE # 323-1 at 7.) After the robbery, a federal arrest warrant was issued for Roy Goodman, Jr., and a federal search warrant was issued for his residence at 5623 Maywood in Hammond, Indiana. (DE # 323-9 ¶ 4.) Both of the warrants were related to the armed robbery at the JC Penny store. (DE ## 323-1 at 6; 323-8 ¶ 3.)

The FBI Defendants that remain in the case were each assigned to the Chicago Illinois South Resident Agency ("South RA"). (DE ## 328-4 ¶ 1; 328-5 ¶ 1; 328-6 ¶ 1; 328-7 ¶ 1.) After obtaining an arrest warrant for Roy Goodman, Jr., agent Lori Warren, from the South RA, sought assistance from the Indianapolis Field Division to execute the warrants in Hammond, Indiana. (DE # 328-1 ¶¶ 4–5.) Ted May, an FBI agent from the Indianapolis division, arranged the forces to be used for the execution of the warrants. (*Id*. ¶¶ 1, 8.) May contacted the Hammond Police Department to ask their SWAT team

---

[1] In the summary that follows, the court refers only to undisputed facts, or, if there is a dispute, notes that it exists. This summary provides an overview. Additional relevant undisputed facts will be referred to in the analysis that follows.

to make the initial entry into the residence for the search and arrest of Roy Goodman, Jr. (*Id.* ¶ 8.)

Defendant Brian Miller was the chief of police of the Hammond Police Department in Hammond, Indiana at the time of the events at issue in this case. (DE # 323-8 ¶ 1.) Miller asserts he was contacted by the FBI, when it sought assistance in executing the warrants. (*Id.* ¶ 4.) He was informed that Roy Goodman, Jr., was "armed and dangerous" and that Roy Goodman, III was "possibly involved" in the armed robbery. (*Id.*)

On December 28, 2007, members of the Hammond Police Department's SWAT unit, also known as the tactical unit, made the initial entry into the residence at 5623 Maywood in Hammond, Indiana. (DE # 323-9 ¶¶ 4, 7.) Ralph Bogie, a Hammond police officer, asserts that one of the Hammond SWAT officers knocked on a door at the rear of the house, but no one responded. (*Id.* ¶ 12.) The door was then forced open. (*Id.*) One of the officers, potentially Christopher Berdine, deployed a diversionary, or "flash-bang" device in the rear of the residence and in the basement. (*Id.* ¶¶ 13, 16–17; 335-11 at 3.)

Plaintiffs were all in the residence, but they were upstairs in bedrooms at this time. (DE ## 323-9 ¶ 13; 335-9 at 5–6, 12; 335-13 at 7–8.) Following the use of the flash-bang devices, they went downstairs and were handcuffed. (DE ## 335-8 at 6–7; 335-9 at 5, 17; 335-13 at 8–9; 335-14 at 12.) Roy Goodman, Jr., asserts that he was

slammed against a wall of his house by officer Ray Finley. (DE ## 335-14 at 18–20; 335-15.) The FBI then took him into custody. (DE # 323-8 ¶ 9.)

Additionally, the FBI and the Calumet City Police Department asked Miller "to have the Hammond Police Department hold Roy Goodman, III, Renee Goodman and Reniece Goodman at the Hammond Police Department's facilities so that they could be interviewed by the FBI and the Calumet City Police Department." (*Id*.) Plaintiffs assert that Defendant Rudy Grasha, a Hammond police officer, removed plaintiff Roy Goodman, III, from the residence. (*See* DE ## 335 at 4; 299-1; 335-1 ¶ 10.) Plaintiffs Reniece, Roy, III, and Renee assert that they were then taken to the Hammond Police Department's facilities. (DE ## 323-13 at 13–14; 335-8 at 12–13.) Reniece asserts they were in handcuffs at the facility, and they were fingerprinted at the facility. (DE ## 299-1; 335-8 at 12–13.) Reniece asserts that she was placed into a cell by herself and then questioned. (DE # 335-8 at 13.)

Plaintiffs eventually filed suit against multiple defendants. The only defendants remaining in the case are the Remaining Hammond Defendants and the FBI Defendants. In their fourth amended complaint (DE # 151), plaintiffs bring seven claims against the Remaining Hammond Defendants and two claims against the FBI Defendants. This includes claims filed under both Indiana law and federal law. (*See id*.) All defendants have now moved for summary judgment. (DE ## 321, 327.)

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 56 requires the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). "[S]ummary judgment is appropriate—in fact, is mandated—where there are no disputed issues of material fact and the movant must prevail as a matter of law. In other words, the record must reveal that no reasonable jury could find for the non-moving party." *Dempsey v. Atchison, Topeka, & Santa Fe Ry. Co.,* 16 F.3d 832, 836 (7th Cir. 1994) (citations and quotation marks omitted).

The moving party bears the initial burden of demonstrating that these requirements have been met. *Carmichael v. Village of Palatine, Ill.,* 605 F.3d 451, 460 (7th Cir. 2010). "[T]he burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex,* 477 U.S. at 325. Once the moving party has met his burden, the non-moving party must identify specific facts establishing that there is a genuine issue of fact for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252 (1986); *Palmer v. Marion County,* 327 F.3d 588, 595 (7th Cir. 2003) (citing *Celotex,* 477 U.S. at 324). In doing so, the non-moving party cannot rest on the pleadings alone, but must present fresh proof in support of its position. *Anderson,* 477 U.S. at 248; *Donovan v. City of Milwaukee,* 17 F.3d 944, 947 (7th Cir. 1994). In viewing the facts presented on a motion

for summary judgment, the court must construe all facts in a light most favorable to the non-moving party and draw all reasonable inferences in favor of that party. *Chmiel v. JC Penney Life Ins. Co.,* 158 F.3d 966 (7th Cir. 1998).

## III. DISCUSSION

### A. *The Remaining Hammond Defendants' Motion for Summary Judgment*

Multiple claims remain against the Remaining Hammond Defendants in plaintiffs' fourth amended complaint: the excessive force claim (Count I), the false arrest claim pursuant to the Fourth Amendment (Count III), the false arrest claim pursuant to state law (Count IV), the conspiracy claim (Count V), the malicious prosecution claim (Count VII), the "claim against the City of Hammond" (Count VIII), and the *respondeat superior* claim against the City of Hammond (Count IX). (DE # 151.) The Remaining Hammond Defendants have moved for summary judgment on all of these claims. (*See* DE ## 321, 322.) The court will discuss each claim, in turn.

### i. *Excessive Force Claim: Flash-Bang Devices*

All four plaintiffs bring a claim for excessive force (Count I) pursuant to the Fourth Amendment. (DE # 151 at 6.) This claim consists of two theories, the first of which pertains to the use of flash-bang devices during the entry into plaintiffs' residence. (*See* DE # 151 ¶ 10.) Although the complaint alleged that all of the Hammond Officers (all of the Remaining Hammond Defendants besides the City of Hammond) used these devices (*see id.*), plaintiffs now only maintain this claim against Christopher

Berdine. (DE # 335 at 7.) Berdine is the only Hammond Officer who admits he "may" have deployed a flash-bang device. (DE # 335-11 at 3.)

The constitutional measure of an officer's use of force under the Fourth Amendment is whether the officer's actions were "'objectively reasonable' in light of the facts and circumstances confronting them." *Graham v. Connor*, 490 U.S. 386, 397 (1989). "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id*. at 396. This reasonableness determination requires "a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing government interests at stake." *Id*. (internal quotation marks omitted).

In a prior order in this case, the court summarized the Seventh Circuit's position on the use of flash-bang devices:

> The Seventh Circuit has stated that flash-bang devices may not be appropriate in every case, or even in most cases. *Estate of Escobedo v. Bender*, 600 F.3d 770, 784 (7th Cir. 2010); *Molina v. Cooper*, 325 F.3d 963, 973 (7th Cir. 2003). Their use can be reasonable if the officers have concern for their personal safety because they know that the defendant is dangerous and has access to a weapon and if the officers know that there is not a risk to other people. *Id*.

*Goodman v. Clark*, No. 2:09 CV 355, 2011 WL 3101769, at *13 (N.D. Ind. July 25, 2011). In *Molina*, the Seventh Circuit found no constitutional violation where officers had information that the suspect had a criminal record including aggravated assault, officers had information that the suspect was at home with access to weapons, the devices were

deployed away from other innocent occupants, and no one was harmed by their use. *Molina*, 325 F.3d at 973; *see also United States v. Folks*, 236 F.3d 384, 388 n. 2 (7th Cir. 2001) (noting that the use of flash-bangs was "sufficiently careful" where police looked into a residence to make sure no one would be injured by a flash-bang device and police carried a fire extinguisher to prevent damage from the devices).

The present case is analogous to *Molina*. The undisputed facts of this case indicate that Roy Goodman, Jr. was suspected of the severe crime of armed robbery, using a firearm. (DE # 323-8 ¶ 3.) The search warrant further indicated that the deadly weapon used in the crime may have been present at the residence. (*Id*. ¶ 4.) Along with the apparent risks to the officers, it is undisputed that the devices were deployed downstairs while plaintiffs were upstairs, away from the devices. (DE ## 323-9 ¶ 13; 335-9 at 5–6, 12; 335-13 at 7–8.) The team also had fire suppression equipment at the ready. (DE # 323-9 ¶ 13.) Thus, the risk to the occupants was limited as compared to the risk to the officers.

Accordingly, the court finds defendants' (specifically, Berdine's) actions to be reasonable. Summary judgment is appropriate on this claim.

ii.     *Excessive Force Claim: All Other Force*

Plaintiffs second excessive force theory, in their fourth amended complaint, relates to allegations that all of the Hammond Officers "struck and/or grabbed" plaintiffs. (DE # 151 ¶ 10.) Defendants move for summary judgment on this claim. (DE # 322 at 19.) In their response on this issue, plaintiffs only object to the entry of

summary judgment as to Roy Goodman, Jr.'s claim against Defendant Ray Finley for slamming him into a wall of his house. (DE # 335 at 7.) Therefore, summary judgment is appropriate, as an initial matter, on all excessive force claims unrelated to this alleged slamming.

Defendants assert qualified immunity on this excessive force claim. (DE # 322 at 19.) When confronted with an assertion of qualified immunity, the court must address two questions: (1) "whether the plaintiff's allegations make out a deprivation of a constitutional right" and (2) "whether the right was clearly established at the time of defendant's alleged misconduct." *McAllister v.* Price, 615 F.3d 877, 881 (7th Cir. 2010). The court may choose which of these two prongs to address first. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

Once the defense of qualified immunity has been raised, it becomes plaintiffs' burden to defeat it. *Mannoia v. Farrow*, 476 F.3d 453, 457 (7th Cir. 2007). However, Roy Goodman, Jr. has not made any attempt to establish that his right not to be "slammed" was clearly established.[2] At most, plaintiffs merely cite the general excessive force standard of *Graham* and a decision that was entered several years *after* the execution of the warrant in the case at hand (*Howard v. Ealing*, 876 F. Supp. 2d 1056 (N.D. Ind. 2012)). (*See* DE # 335 at 6–7.) Neither of those decisions can act as a closely analogous case establishing (at the time of the alleged slamming) that Finley's conduct was

---

[2] In fact, plaintiffs do not directly address qualified immunity anywhere in their response. (*See* DE # 335.)

unconstitutional. *See Siebert v. Severino*, 256 F.3d 648, 654–55 (7th Cir. 2001). Nor does any of plaintiffs' meager analysis on this claim indirectly convince the court that the violation was so obvious to be clearly established.

On the other hand, defendants cite at least one case which, on its own, calls into question whether the violation was clearly established. *See Sow v. Fortville Police Dep't*, 636 F.3d 293, 304 (7th Cir. 2011) (officer did not use excessive force where the officer pushed the plaintiff *after* he was arrested, causing him to bump his head on a squad car). Plaintiffs have not met their burden as set forth above. Thus, defendants are entitled to qualified immunity on this claim.

### iii. *False Arrest Claim Pursuant to the Fourth Amendment*

All four plaintiffs assert a false arrest claim (Count III) pursuant to the Fourth Amendment against all of the Hammond Officers. (DE # 151 at 7.) However, in their response brief, plaintiffs only oppose summary judgment on this claim as to two defendants. (DE # 335 at 7.) They now assert only that Defendant Brian Miller falsely arrested plaintiffs Reniece, Roy, III, and Renee Goodman, and Defendant Rudy Grasha falsely arrested Roy Goodman, III. (*Id.* at 7–8.) Therefore, as an initial matter, summary judgment is granted on Roy Goodman, Jr.'s Fourth Amendment false arrest claim and on any false arrest claims against defendants other than Miller and Grasha.

Although plaintiffs' present their claim as a Fourth Amendment "false arrest" claim, the language of the Fourth Amendment actually prohibits unreasonable seizures, rather than false arrests. *See Caldwell v. Jones*, 513 F. Supp. 2d 1000, 1006 (N.D. Ind. 2007)

("Only government activity that constitutes either a 'search' or a 'seizure' is regulated by the Fourth Amendment."); *see also Mudd v. City of New Haven, Ind.*, 196 F. Supp. 3d 882, 891 (N.D. Ind. 2016) (interpreting a false arrest claim brought under the Fourth Amendment as a claim for unreasonable seizure of person).

Consequently, to establish a constitutional violation under the Fourth Amendment, plaintiffs must demonstrate (1) that defendants' conduct constituted a "seizure" and, if so, (2) that the seizure was "unreasonable." *Caldwell*, 513 F. Supp. 2d at 1006. A person has been "seized" under the Fourth Amendment if "in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *Id.* "A seizure thus occurs when a government actor by means of physical force or show of authority terminates or restrains an individual's freedom of movement through means intentionally applied." *Id.* (internal quotation marks omitted).

Defendants argue that they did not "arrest" plaintiffs (other than Roy, Jr.). (DE # 322 at 9-10.) However, it is not their definition of the action that matters. Miller admits that the members of the Goodman family were escorted from their residence. (DE # 335-1 ¶ 10.) Although Miller asserts this was not an arrest of Reniece, Roy, III, or Renee, he admits that he was asked to hold them at the Hammond Police Department's facilities. (*Id.* ¶ 9.) This evidence coincides with the assertions of the plaintiffs that they were handcuffed, transported to the City of Hammond Police Department's facilities, and held for questioning. (DE ## 323-13 at 13–14; 335-8 at 12–13.)

As to defendant Grasha, plaintiffs present a photograph (DE # 299-1) showing him restraining Roy, III, in the residence, and point to Grasha's own affidavit which identifies him as the individual in the photograph (DE # 335-7 ¶ 7.) This alone is not enough for liability, as "officers executing a search warrant have categorical authority to detain any occupant of the subject premises during the search." *United States v. Jennings*, 544 F.3d 815, 818 (7th Cir. 2008). However, Miller himself asserts that Grasha was directed to escort members of the Goodman family from the residence. (DE # 335-1 ¶ 10.) This in combination with the evidence that plaintiffs were taken from their residence to the Hammond Police Department's facilities, raises a genuine issue of fact as to whether Grasha did more than simply hold plaintiffs during the execution of the search warrant.

The evidence, when viewed in a light most favorable to plaintiffs, indicates that Miller and Grasha brought plaintiffs away from the location that was subject to the warrant, took them to a police station, and held them there. Given this evidence, a reasonable jury could find that Miller and Grasha intentionally used physical force to restrain plaintiffs' freedom of movement to bring them to the Hammond police station for questioning where they did not feel free to leave. A genuine issue of fact remains as to whether Miller seized Reniece, Roy, III, and Renee Goodman and whether Grasha seized Roy, III.

Defendants also argue that these alleged seizures were not unreasonable because plaintiffs' cannot establish that defendants lacked probable cause to arrest them. (DE

# 322 at 10.) An arrest with probable cause forecloses a Fourth Amendment false arrest claim, as such a seizure would then be reasonable. *See Holmes v. Vill. of Hoffman Estate*, 511 F.3d 673, 679–80 (7th Cir. 2007). "A police officer has probable cause to arrest if a reasonable person would believe, based on the facts and circumstances known at the time, that a crime had been committed." *McBride v. Grice*, 576 F.3d 703, 707 (7th Cir. 2009). The court evaluates probable cause based on the facts as they would have appeared to a reasonable person in the position of the arresting officer. *Mahoney v. Kesery*, 976 F.2d 1054, 1057 (7th Cir. 1992).

None of the parties assert that there was a warrant to arrest any of the plaintiffs other than Roy, Jr. In fact, Miller specifically asserts that the other plaintiffs were not arrested. The court also notes that there is no evidence that anything occurred at the residence, during the execution of the warrant, which gave defendants probable cause to arrest plaintiffs. While these facts, on their own, do not necessarily mean that probable cause for arrest was lacking, they are relevant to the extent they relate to the Hammond Officers' knowledge of a potential lack of probable cause to arrest the family members at the time of the alleged arrests.

Meanwhile, defendants point out that Reniece, Roy, III, and Renee, were all present at the shopping center at the time of the alleged armed robbery, while Reniece and Roy, III, were specifically in the JC Penny store at the time. (DE ## 323-11 at 49; 323-12 at 24.) Additionally, Miller asserts he was aware that Roy, III, was "possibly involved in the armed robbery." (DE # 335-1 ¶ 4.) We note that "probable cause is only a

probability or substantial chance of criminal activity, not a certainty that a crime was committed." *Mannoia v. Farrow*, 476 F. 3d 453, 457 (7th Cir. 2007). Yet, this statement regarding a "possibility" of involvement does not necessarily equate to a "substantial chance or probability" of crime.

The ultimate probable cause determination is based on reasonableness, which is generally an issue for the jury. *Reardon v. Wroan*, 811 F.2d 1025, 1027 (7th Cir. 1987). "Accordingly, a conclusion that probable cause existed as a matter or law is appropriate *only when* no reasonable jury could find that the officers did not have probable cause to arrest . . . ." *Maxwell v. City of Indianapolis*, 998 F.2d 431, 434 (7th Cir. 1993) (emphasis added). Stated in other terms, "[a]lthough the issue of probable cause . . . generally is a jury question, the court may conclude that probable cause existed as a matter of law when there is no room for a difference of opinion concerning facts or the reasonable inferences to be drawn from them." *Tibbett v. McPherson*, 5 F. Supp. 3d 989, 993 (S.D. Ind. 2014).

Here, the facts presented leave room for a difference of opinion, as they do not so definitively establish probable cause as a matter of law. Given the facts and the reasonable inferences that could be drawn from those facts, the court finds that a reasonable jury could conclude that defendants knew they lacked probable cause to arrest. In particular, the lack of a warrant for the family members as compared to Roy, Jr., and the limited additional evidence pertaining to those family members, lead the court to this conclusion. Therefore, the existence of probable cause remains as a genuine

issue of fact for the jury, thus preventing summary judgment on the claims that Miller seized Reniece, Roy, III, and Renee Goodman and Grasha seized Roy, III.

Furthermore, defendants never properly raise qualified immunity on this claim. Although plaintiffs write at length about qualified immunity regarding their excessive force claims, they never once mention qualified immunity in relation to their false arrest/seizure claim, in their brief. (*See* DE # 322.) Even in the motion itself (DE # 321), plaintiffs identify qualified immunity as an issue to be addressed regarding their excessive force claims, but not the false arrest claims. In their reply, defendants finally address qualified immunity on this claim but only briefly. In one sentence they assert: "In fact, even if a court thinks that probable cause is lacking, a defendant is still entitled to summary judgment as to the issue of qualified immunity unless it was objectively unreasonable for the defendant to think that there was probable cause to arrest." (DE # 342 at 11.) Putting aside whether or not that legal assertion is even true, it only offhandedly raises qualified immunity on this issue.

As they have not sufficiently raised the issue of qualified immunity on this claim in their initial motion and brief, and only do so incompletely in their reply, the court does not need to address it. *See Hernandez v. Cook County Sheriff's Office*, 634 F.3d 906, 913 (7th Cir. 2011) ("It is well established in our precedents that "skeletal" arguments may be properly treated as waived . . . as may arguments made for the first time in reply briefs.") The concern here is that plaintiffs were not put on notice that they needed to respond to this issue, and so ruling would be prejudicial to plaintiffs. *Id*.

Nevertheless, even if defendants do not waive their argument, qualified immunity is not appropriate at the summary judgment stage. As the court describes above, a material issue of fact remains as to whether or not defendants' violated plaintiffs' Fourth Amendment rights, because an issue of fact remains as to probable cause. And, having found a material issue of fact as to probable cause, a denial of summary judgment on the issue of qualified immunity results as well. *Arnold v. City of Fort Wayne*, 210 F. Supp. 3d 1055, 1067 (N.D. Ind. 2016). "Where the only issue bearing on immunity is whether the defendant had probable cause to make the search or arrest that is challenged, merits and immunity merge; the dispositive question is simply whether the defendant did have probable cause." *Boyce v. Fernandez,* 77 F.3d 946, 948 (7th Cir. 1996); *Maxwell*, 998 F.2d at 435-36; *Northen v. City of Chicago,* 126 F.3d 1024, 1027 (7th Cir. 1997).[3] Accordingly, summary judgment is not appropriate on this claim, as to Miller and Grasha.

### iv.    *False Arrest Claim Pursuant to State Law*

All four plaintiffs bring this false arrest claim (Count IV) against the Hammond Officers. (DE # 151 at 7.) Defendants argue that this claim is barred as to each of the Hammond Officers by Indiana Code § 34-13-3-5 of the Indiana Tort Claims Act ("ITCA"). (DE # 322 at 5.) The ITCA limits when a plaintiff can sue a governmental

---

[3] It is also clearly established that a seizure absent a warrant or probable cause would violate the Goodmans' Fourth Amendment rights.

employee personally. *Sutter v. Carroll*, No. 1:11-CV-83, 2012 WL 2343372, at *11–12 (N.D. Ind. June 20, 2012). Specifically, Indiana Code § 34-13-3-5(b) provides that a "lawsuit alleging that an employee acted within the scope of the employee's employment bars an action by the claimant against the employee personally."

Indiana courts have defined conduct within the scope of employment as "conduct . . . of the same general nature as that authorized, or incidental to the conduct authorized" by the employment. *See Bushong v. Williamson*, 790 N.E.2d 467, 471 (Ind. 2003) (quoting *Celebration Fireworks, Inc. v. Smith*, 727 N.E.2d 450, 453 (Ind. 2000)). The ITCA "goes so far as to protect officers from liability for both tortious and even criminal acts where the purpose of the employee's conduct was to further the employer's business." *McConnell v. McKillip*, 573 F. Supp. 2d 1090, 1103–04 (S.D. Ind. 2008) (citing *City of Anderson v. Weatherford*, 714 N.E.2d 181, 186 (Ind. Ct. App. 1999)).

Whether certain acts of an employee are within the scope of employment is normally a question of fact but it "may be determined as a mater of law if the designated materials conclusively demonstrate." *Long v. Barrett*, 818 N.E.2d 18, 24 (Ind. Ct. App. 2004) (internal quotation marks omitted). In their response, plaintiffs do not argue that the Hammond Officers acted outside the scope of their employment by arresting plaintiffs. (*See* DE # 335.) Similarly, plaintiffs point to no evidence or caselaw in their response which would indicate the Officers acted outside the scope of their employment.

On the other hand, the undisputed facts disclose that, at the time of the arrests, the Hammond Officers were in uniform at the Goodmans' residence for the purpose of executing a warrant, conduct that is of the same general nature as the everyday duties of law enforcement officers. *See McAllistar v. Town of Burns Harbor*, 693 F. Supp. 2d 815, 823 (N.D. Ind. 2010). Moreover, the Hammond Officers were furthering their employer's business by arresting plaintiffs. *See Sutter*, 2012 WL 2343372, at * 13.

Accordingly, Indiana Code § 34-13-3-5 bars this claim and summary judgment is appropriate on this claim.[4]

        *v.*    *Conspiracy Claim*

Plaintiffs' fourth amended complaint contains a conspiracy claim against all of the Hammond Officers (Count V) for violations of the United States Constitution. (DE # 151 at 8.) Defendants move for summary judgment on the claim. (DE # 322 at 11.) In their response on this issue, plaintiffs only object to the entry of summary judgment as to Defendant Miller's conspiracy to arrest plaintiffs Renee, Reniece, and Roy Goodman, III. (DE # 335 at 10.) Therefore, summary judgment is appropriate on Roy Goodman, Jr.'s conspiracy claim and on any conspiracy claim against defendants other than Miller.

In order to survive a motion for summary judgment on a conspiracy claim, a plaintiff must produce "evidence showing: '(1) [the existence of] an express or implied

---

[4] None of the parties assert Indiana Code § 34-13-3-3(8) as a reason to grant or deny summary judgment. Nevertheless, the court notes that § 34-13-3-5 "provides another species of immunity" than § 34-13-3-3. *See Mayes v. City of Hammond*, 442 F. Supp. 2d 587, 629 (N.D. Ind. 2006). Therefore, the exclusion for false arrest in § 34-13-3-3(8) need not necessarily apply to § 34-13-3-5. *See id.*

agreement among defendants to deprive plaintiff of his . . . constitutional rights and (2) actual deprivations of those rights in the form of overt acts in furtherance of the agreement.'" *Garcia v. City of Chicago*, No. 09 C 5598, 2012 WL 601844, at *3 (N.D. Ill. Feb. 23, 2012) (citing *Scherer v. Balkema,* 840 F.2d 437, 442 (7th Cir. 1988)). A plaintiff must do more than offer "speculation and conjecture." *Sow,* 636 F.3d at 304–05.

Plaintiffs claim they can establish a conspiracy to falsely arrest them that existed between Miller, defendant Lori Warren, and former defendant Ted May. (DE # 335 at 10.) However, the only evidence linking May and Warren to this alleged conspiracy relates to the arrest of Roy Goodman, Jr. (*See* DE # 335-3 ¶¶ 4, 8.) Roy Goodman, Jr. no longer asserts this claim. Nevertheless, Miller's own affidavit provides evidence of a conspiracy to arrest the other plaintiffs. According to Miller, himself:

> In addition to the FBI taking Roy Goodman, Jr. into custody in conjunction with his existing arrest warrant, the FBI and Calumet City Police Department also asked me to have the Hammond Police Department hold Roy Goodman, III, Renee Goodman and Reniece Goodman at the Hammond Police Department's facilities so that they could be interviewed by the FBI and the Calumet City Police Department. I think that the representative from the Calumet City Police Department who asked me to hold [them] may have been Detective Casey Erickson; I do not recall who did so for the FBI.

(DE # 335-1 ¶ 9.)

First, it does not matter that this evidence does not definitively identify Miller's co-conspirators by name. "Although the government need not always establish specifically with whom the defendant conspired, it must nonetheless establish that a

conspiratorial agreement existed between the defendant and another individual."

*United States v. Contreras*, 249 F.3d 595, 598 (7th Cir. 2001).

Second, Miller's statement provides evidence that is more probative than simple speculation. A reasonable jury could infer from this evidence that there was an agreement to arrest[5] plaintiffs (other than Roy Jr.) without probable cause. *See Sow,* 636 F.3d at 305 ("The agreement may be inferred from circumstantial evidence, but only if there is sufficient evidence that would permit a reasonable jury to conclude that a meeting of the minds had occurred and that the parties had an understanding to achieve the conspiracy's objectives.").

Thus, plaintiffs have established a genuine issue of material fact as to whether or not an agreement exists to deprive plaintiffs of their constitutional rights. Additionally, the court has already concluded that a genuine issue of material fact exists regarding whether or not Miller actually falsely arrested defendants. This satisfies the second prong of the conspiracy standard for summary judgment (actual deprivation through overt acts).

Because a genuine issue of material fact remains on this issue, summary judgment is not appropriate on this claim.

---

[5] Once again, *Miller*'s use of the term "hold" instead of "arrest" does not mean this was not actually an agreement to arrest plaintiffs.

*vi.    Malicious Prosecution Claim*

Plaintiff Roy Goodman, Jr., brings this claim (Count VII) against the Hammond Officers under Indiana state law. (DE # 151 at 9.) Defendants move for summary judgment on this claim, arguing that it is barred by Indiana Code § 34-13-3-3(6). (DE # 322 at 5.) According to that section, "[a] governmental entity or an employee acting within the scope of the employee's employment is not liable if a loss results from the following . . . (6) [t]he initiation of a judicial or an administrative proceeding." Ind. Code § 34-13-3-3(6). Additionally, the Seventh Circuit has recognized that "the Indiana Tort Claims Act grants broad immunity to Indiana government units and employees from malicious prosecution actions." *Serino v. Hensley*, 735 F.3d 588, 593 (7th Cir. 2013).

Plaintiffs do not contest defendants' argument that summary judgment should be granted on Count VII. (*See* DE # 335.) Furthermore, there is no evidence that any of the Hammond Officers acted outside of the scope of their employment to initiate any judicial or administrative proceeding against Roy Goodman, Jr. Therefore, the claim for malicious prosecution is barred and summary judgment is appropriate.

*vii.    Claim Against the City of Hammond (Monell)*

All four plaintiffs assert a claim against the City of Hammond (Count VIII) alleging that the city is liable wherever the Hammond Officers are found liable. (DE # 151 at 9–10.) Count IX specifically covers vicarious liability for state law claims, so Count VIII must cover liability for federal law claims only (otherwise it would be barred as duplicative). Regarding the plaintiffs' federal claims, a municipality cannot be held

liable for alleged constitutional torts under a theory of *respondeat superior. Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978). Instead, plaintiffs must assert that the constitutional violation was caused by either (1) an express policy of the City, (2) a widespread practice, or (3) a person with final policymaking authority. *Latuszkin v. City of Chicago*, 250 F.3d 502, 504 (7th Cir. 2001). Defendants move for summary judgment on this claim and argue that plaintiffs have failed to assert any of these requirements. (DE # 322 at 4.)

Plaintiffs counter, in their response, that the City of Hammond can be held liable because Defendant Miller, as Chief of Police of the City of Hammond, was a person with final policymaking authority. (DE # 335 at 12.) Officials with final decision-making authority are deemed policymakers for *Monell* purposes, and the court must look to state law to determine the scope of that decision-making authority. *Valentino v. Vill. Of S. Chicago Heights*, 575 F.3d 664, 675-76 (7th Cir. 2009).

In *Love v. Rehfus*, 946 N.E.2d 1, 20-22 (Ind. 2011), the Indiana Supreme Court examined whether a fire chief acted as a final policymaker for *Monell* purposes when he terminated an employee. After finding little guidance in state statutes, the court noted "[i]f an official has some discretion to act, but his or her actions are reviewable by the originally authorized policymakers, then those policymakers have not delegated final policymaking authority to that official." *Id*. at 22. The court found that although the fire chief had discretion to terminate an employee, a question remained as to whether his

decision was reviewable by a higher authority. *Id*. The remaining issue of fact made summary judgment inappropriate. *Id*.

In the present case, Miller, as chief, clearly had discretion to act in arresting plaintiffs but it is not clear from the record if his actions are reviewable. Thus, the court concludes that genuine issues of material fact preclude summary judgment on this issue.

In their reply, defendants do not argue that Miller does not qualify as a final policymaker. (DE # 342 at 3–4.) Instead they argue that, even if a *Monell* policymaker was properly asserted, there can be no liability against the City because there is no underlying liability for the individual officers. (*Id*.) This is correct as to Roy Goodman, Jr. However, the court has not rejected the other plaintiffs' claims against Miller. Therefore, summary judgment is appropriate on this claim, only as to plaintiff Roy Goodman, Jr.

> viii.    *Respondeat Superior Claim Against the City of Hammond*

All four plaintiffs assert a "supplementary claim" (Count IX) alleging that the City of Hammond is responsible for the actions of the Hammond Officers, under the doctrine of *respondeat superior.* (DE # 151 at 10.) This claim only applies to the underlying Indiana state law claims in Counts IV and VII. (*See id*.) Defendants move for summary judgment on this claim. (DE # 322 at 14.)

The court, above, found that summary judgment is appropriate as to both Counts IV and VII. However, this does not necessarily mean that Count IX fails. As far as Count

VII, Indiana Code § 34-13-3-3(6) bars the claim as to both the governmental entity and the employees. Therefore the City of Hammond cannot be liable for malicious prosecution.

However, Indiana Code § 34-13-3-5—the section defendants rely upon to dismiss Count IV—only bars claims against an employee in his or her personal capacity, not against a municipality. Because it is undisputed that the Hammond Officers were acting within the scope of their employment when they arrested plaintiffs the claim is barred as to them, but the City of Hammond may remain in the case as a defendant. *See Laffoon v. City of Portage*, No. 2:09-CV-103, 2011 WL 2293331, at *11 (N.D. Ind. June 8, 2011) (denying summary judgment as to the city on a state law claim of battery but granting summary judgment as to the employee under Indiana Code § 34-13-3-5); *see also City of Fort Wayne v. Moore*, 706 N.E.2d 604, 607 (Ind. Ct. App. 1999) ("Under the doctrine of respondeat superior, an employer is liable for the acts of its employees which were committed within the course and scope of their employment").

Because the state law false arrest claim *against the City of Hammond, Indiana* is not barred by § 34-13-3-5(b), the court must determine whether that claim is supported by evidence such that it survives summary judgment.

Under Indiana state law, an arrest made in the absence of probable cause is a false arrest. *Row v. Holt*, 864 N.E.2d 1011, 1016 (Ind. 2007). An arrest occurs when officers interrupt an individual's freedom and restrict his or her liberty of movement.

*Roberts v. State*, 599 N.E.2d 595, 598 (Ind. 1992); *Turner v. Sheriff of Marion County*, 94 F. Supp. 2d 966, 995 (S.D. Ind. 2000).

Like the court discussed when reviewing plaintiffs' Fourth Amendment false arrest claim, a genuine issue of material fact exists as to whether there was probable cause to arrest plaintiffs Renee, Reniece, and Roy Goodman, III, and as to whether their freedom of movement was restricted to constitute a seizure (or for the state law claim, an arrest). These same genuine issues of material fact that prevent this court from granting summary judgment on the § 1983 false arrest claim, also prevent summary judgment on the state law claim against the City of Hammond. Therefore, summary judgment is appropriate on this claim only as to Roy Goodman, Jr.

ix.     *Statute of Limitations*

Defendants assert that plaintiffs have failed to comply with various statutes of limitations. (DE # 322 at 23.) For this reason, they request that the court grant summary judgment (1) against Roy Goodman, Jr., and in favor of all the Remaining Hammond Defendants, and (2) against the other plaintiffs and in favor of all of the Hammond Officers except Brian Miller. (*Id.*)

Plaintiffs do not respond to this argument. (*See* DE # 335.) Nevertheless, the court has already decided this issue. (DE # 115 at 28–34.) The court previously allowed plaintiffs to file an amended complaint featuring the names of the individual Hammond Defendants, even though the statute of limitations had expired. (*Id.*) Therefore, defendants' argument on this issue fails.

*x.* *Punitive Damages*

In the fourth amended complaint, plaintiffs demand punitive damages. Punitive damages are not available against municipalities, under both § 1983 and the Indiana Tort Claims Act. *Kentucky v. Graham*, 473 U.S. 159, 167 n. 13 (1985); Ind. Code § 34-13-3-4. Therefore, plaintiffs may only seek punitive damages against defendants Brian Miller and Rudy Grasha.

Punitive damages are only available against government actors in § 1983 actions if there is a showing of "evil motive or intent, or . . . reckless or callous indifference to the federally protected rights of others." *Kyle v. Patterson*, 196 F.3d 695, 697–98 (7th Cir. 1999). "While evaluations of motive and intent are generally inappropriate on a motion for summary judgment . . . [there is] an exception to this rule where a plaintiff fails to produce evidence raising a material question of fact regarding aggravating circumstances or the reckless or callous nature of defendant's actions." *Id*. Defendants assert that plaintiffs' claims for punitive damages fail because plaintiff fails to produce the necessary evidence to raise such a question of fact. (DE # 322 at 24.) Plaintiffs have not responded to this argument. (*See* DE # 335.)

Nevertheless, the court finds that a material question of fact remains on this issue, precluding summary judgment. As the court discussed above, a material question of fact exists as to whether or not Miller and Grasha had probable cause to arrest the plaintiffs, other than Roy, Jr. If the jury finds that Miller and Grasha knew that they lacked probable cause to arrest, that jury could reasonably infer that to continue with an

arrest would be callously indifferent to the plaintiffs' Fourth Amendment rights. Accordingly, summary judgment is not appropriate on this issue as to Miller and Grasha.

B. *FBI Defendants' Motion for Summary Judgment*

Only two claims remain against the FBI Defendants in plaintiffs' fourth amended complaint: the excessive force claim (Count II), and the *Bivens* conspiracy claim (Count VI). (DE # 151.) The FBI Defendants have moved for summary judgment on both of these claims. (*See* DE ## 327, 328.) The court will discuss each claim, in turn.

i. *Excessive Force Claim*

On July 25, 2011, the court entered an order dismissing plaintiffs' excessive force claim, but granted leave to amend the claim. (DE # 150.) However, in granting that leave, the court limited the excessive force claim to "the use of the flash-bang grenades because the federal defendants[6] have qualified immunity for their use of other means of force." (*Id*. at 29.) Plaintiffs' fourth amended complaint was filed one month later, on August 25, 2011, pursuant to the court's leave. (*See* DE # 151.)

The FBI Defendants now move for summary judgment, because there is no evidence that the FBI Defendants deployed any flash-bang grenades or instructed other officers to do so. (DE # 328 at 13.) In their response to the motion for summary judgment, the plaintiffs do not object to this characterization of the evidence. (*See* DE

---

[6] The federal defendants included both the FBI Defendants and other defendants who have since been dismissed. (*See* DE ## 150, 318.)

# 336.) Accordingly, the undisputed evidence states that the FBI Defendants did not deploy flash-bang grenades at plaintiffs' residence or instruct the Hammond Officers to do so. (DE ## 328-4 ¶¶ 8–9; 328-5 ¶¶ 8–9; 328-6 ¶¶ 8–9; 328-7 ¶¶ 8–9.)

In fact, plaintiffs do not argue that their excessive force claim should survive summary judgment, or even address the claim, at all, in their response. (*See* DE # 336.) Therefore, summary judgment is appropriate on plaintiffs' claim for excessive force against the FBI defendants.

### ii. *Conspiracy Claim*

In its order dated July 25, 2011, the court dismissed plaintiffs' conspiracy claim, but granted leave to amend the claim. (DE # 150.) In doing so, the court limited the claim to a "conspiracy related to the use of excessive force." (*Id.* at 29.) Following this order, plaintiffs reasserted a conspiracy claim in their fourth amended complaint. (DE # 151 at 8.) Consistent with the terms of the court's prior order, that claim is limited to a conspiracy related to the use of excessive force.

The FBI Defendants move for summary judgment on this claim, on the grounds that plaintiffs present no evidence that defendants engaged in a conspiracy related to the use of excessive force. (*See* DE # 328 at 14.) Plaintiffs do not dispute that their conspiracy claim fails on that basis. However, they assert that their "conspiracy claims in relation to [p]laintiffs' false arrest" should survive. (*See* DE # 336 at 5–6.)

Any conspiracy claim related to false arrest was barred by the court's prior order, on its face. According to the law of the case doctrine, "a ruling made in an earlier phase

of a litigation controls the later phases unless a good reason is shown to depart from it."

*Kathrein v. City of Evanston, Ill.*, 752 F.3d 680, 685 (7th Cir. 2014). One such good reason is

the introduction of substantial new evidence after the court's initial review and

decision. *Key v. Sullivan*, 925 F.2d 1056, 1060 (7th Cir. 1991). Here, plaintiffs contend that

they have new evidence, which provides the court a good reason to reverse its prior

decision and allow the conspiracy claim to move forward as it relates to the alleged

false arrests. (DE # 336 at 5–6.)

Plaintiffs have not filed an affirmative motion asking the court to reconsider its

prior order. They simply make their request within their response to the motion for

summary judgment. (*See* DE # 336.) Although this might not be the procedurally proper

way to make such a request, the court will nonetheless consider plaintiffs' alleged new

evidence.

To start, none of plaintiffs' new evidence implicates defendants Crocker, Landau,

or Soyez. (*See* DE # 336 at 6.) In fact, the only new evidence which relates to any of the

FBI Defendants is a statement from former defendant Ted May's affidavit which

indicates that Special Agent Warren "requested assistance with conducting the arrest of

Roy Goodman Jr." (DE # 336-3 ¶ 4.) This evidence suggests only that Warren might

have had an agreement to arrest Roy Goodman, Jr., not any of the other plaintiffs.

Although Roy Goodman, Jr. did bring a conspiracy claim in Count VI of the

fourth amended complaint, the plaintiffs have only contested the applicability of the

law of the case doctrine as to Renee Goodman, Reniece Goodman, and Roy

29

Goodman, III.[7] (DE # 336 at 5–6.) Because none of this "new" evidence suggests that any FBI defendant conspired to falsely arrest Renee, Reniece, or Roy, III, the court has no good reason to reconsider its order dated July 25, 2011.

Thus, the prior decision remains in place and plaintiffs' *Bivens* conspiracy claim is limited to a conspiracy related to the use of excessive force. Since plaintiffs do not present any argument or evidence to support this claim, summary judgment is appropriate.

## IV.    CONCLUSION

For the foregoing reasons, the court

(1) **GRANTS** the FBI Defendants' Motion for Summary Judgment (DE # 328);

(2) **DENIES** Remaining Hammond Defendants' Motion for Summary Judgment (DE # 321) as to Count III against Rudy Grasha and Brian Miller, Count V against Brian Miller, Count VIII against the City of Hammond for false arrest, and Count IX against the City of Hammond for false arrest;

(3) Otherwise **GRANTS** the Remaining Hammond Defendants' Motion for Summary Judgment (DE # 321);

---

[7] Furthermore, an officer cannot be liable for a conspiracy claim if there is no underlying constitutional violation. See *Goldschmidt v. Patchett*, 686 F.2d 582 (7th Cir. 1982). Plaintiffs do not argue that defendants lacked probable cause to arrest Roy Goodman, Jr. Nor do they contest the validity of the warrant. Therefore, even if plaintiffs argued that their conspiracy claim should survive as to Roy Goodman, Jr., the claim would fail because there is no underlying violation.

(4) **DIRECTS** the Clerk to dismiss defendants Christopher Crocker, Carrie Landau, Christopher Soyez, Lori Warren, Christopher Berdine, Ralph Bogie, Robert Bunner, Raymond Finley, Officer Edward, John Ratajczak, Thomas Strabavy, Patrick Vicari, and Timothy Walczak from this case, because no claims remain pending against them;

(5) **DIRECTS** the clerk to dismiss plaintiff Roy Goodman, Jr. from this case, as summary judgment has been granted on all of his claims; and

(6) **ORDERS** the parties to file a joint status report regarding their willingness to engage in a settlement conference before a Magistrate Judge by October 20, 2017. A trial date will be set under a separate order.

**SO ORDERED.**

Date: September 29, 2017

s/James T. Moody_____
JUDGE JAMES T. MOODY
UNITED STATES DISTRICT COURT